## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY

**REBECCA L. SMITH, WALTER A. SMITH**, individually and on behalf of all similarly situated individuals,

      Plaintiffs,

           *v.*

**PLYCEM USA, LLC, PLYCEM USA, INC., ELEMENTIA USA, INC., ELEMENTIA, S.A.B. DE C.V.,**

      Defendants.

Case No.   3:19-CV-71-DJH

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiffs Rebecca L. Smith and Walter A. Smith, on behalf of themselves and others similarly situated ("Class Members"), now bring the following Class Action Complaint.

### NATURE OF ACTION

1.     This is a consumer class action against Defendants Plycem USA LLC, Plycem USA, Inc., Elementia USA, Inc., and Elementia S.A.B. De C.V. (hereinafter referred to as "Defendants") on behalf of all persons and entities who own homes, residences or other structures physically located in Kentucky, on which Defendants' Allura fiber cement exterior siding is or was installed.

2.     Defendants' Allura Fiber Cement Siding is referred to as "the Siding" in this complaint.

3.     As discussed herein, the Siding on Plaintiffs' and Class Members' homes suffers from an inherent defect resulting in the Siding cracking, splitting, warping and breakage.

4.    The cracking, splitting, warping, and breakage create paths for eventual water and moisture intrusion as a result.

5.    Despite the Defendants representations that the Siding meets the applicable standards and building codes for performance and weather resistance, the Siding fails prematurely and is not suitable for use as an exterior building product.

6.    However, as a result of the defect in the Siding, Plaintiffs and Class Members have incurred and will incur thousands of dollars in damages to replace the Siding.

## THE PARTIES

7.    Plaintiffs are citizens and residents of Oldham County, Kentucky.

8.    Defendant Plycem USA LLC was and is a Delaware corporation, with a principal place of business in Texas, and all times relevant herein, Plycem USA LLC transacted and conducted business in Kentucky.

9.    Plycem USA LLC manufactured, advertised, marketed and sold defective Allura fiber cement siding that was installed on Plaintiffs' homes and those of hundreds if not thousands of Class Members in Kentucky.

10.    Defendant Plycem USA Inc. was a Georgia corporation, with a principal place of business in Texas. At all times relevant herein, Plycem USA Inc. transacted and conducted business in Kentucky.  Upon information and belief, Plycem USA Inc. merged with and is not a part of Plycem USA LLC.

11.    Plycem USA Inc. manufactured, advertised, marketed and sold defective Allura fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members in Kentucky.

12.    Defendant Elementia USA, Inc. is a Delaware corporation, with a principal place

of business in Texas. At all times relevant herein, Elementia USA, Inc. transacted and conducted business in Kentucky.

13.      Elementia USA, Inc. manufactured, advertised, marketed and sold defective Allura fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members in Kentucky.

14.      Defendant Elementia, S.A.B. De C.V. was and is a corporation organized and existing under the laws of Mexico. At all times relevant herein, Elementia, S.A. De C.V. conducts and is engaged in business in the State of Kentucky.

15.      Elementia, S.A.B. De C.V. manufactured, advertised, marketed and sold defective Allura fiber cement siding that was installed on Plaintiffs' homes and those of thousands of Class Members in Kentucky.

16.      Elementia S.A.B. De C.V. holds the trademark on the Allura product lines.[1]

17.      At all times relevant herein, Defendants jointly transacted and conducted business in Kentucky.

18.      The Defendants are the agents and/or alter egos of each other.  Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the Allura fiber cement siding at issue.

19.      At all times relevant herein, the Defendants were actual and/or de facto joint ventures in the design, development, manufacture, marketing, and sales of the fiber cement siding at issue.

## JURISIDICTION AND VENUE

20.      This Court has personal jurisdiction over the parties and has jurisdiction over the

---

[1] http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4804:xka48.2.13

subject matter of this action.

21.     Jurisdiction in this Court lies under 28 U.S.C. § 1332(a) (the general diversity statute), because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship among the parties.

22.     Jurisdiction also lies under § 1332(d)(2) ("CAFA"), because, as to the proposed class, the amount in controversy exceeds $5,000,000, and the citizenship of the proposed class of Kentucky homeowners is at least minimally diverse from the Defendants.

23.     Venue lies in this Court under 28 U.S.C. § 1391(b)(2).

### FACTUAL ALLEGATIONS

24.     Defendants hold themselves out to the construction industry and the public at large as being providers of superior, quality, and durable products, including the Siding that is the subject of this litigation.

25.     At all times relevant herein, Defendants were engaged in the design, manufacturing, marketing, sale, supply and delivery of the fiber cement siding in the State of Kentucky.

26.     At all times relevant herein, Defendants designed, manufactured, marketed, sold, supplied and distributed the Siding.

27.     Upon information and belief, in making the Siding, Defendants used excessive fly ash as in ingredient that became unevenly distributed throughout the Siding.  Instead of fly ash, Defendants could have used common grain and silica used by other manufacturers of fiber cement siding.

28.     Fly ash is a by-product of coal burning power plants and costs less than cement, so its use by Defendants lowered the cost of making the Siding.

29.     However, Defendant's decision to use an excessive amount of fly ash resulted in brittleness, porosity problems, and other uniform damages alleged herein—none of which are inherent in the better grain and silica sand design formulations.

30.     Upon information and belief, Defendants learned that the addition of an excessive amount fly ash and/or improper distribution thereof, into its Siding caused brittleness, cracking, splitting, and breakage that creates paths for water intrusion into the home.

31.     Defendants market the Siding as durable, and as offering long-lasting protection for a specified life of 50-years.

32.     Defendants have marketed and represented the Siding is a durable, aesthetically pleasing, and lasting exterior building product, claiming specifically, that the Siding, *inter alia,* "won't rot, warp or splinter and is designed to significantly outperform wood in every way;" is "[U]nlike wood, vinyl and other traditional building materials, Allura Fiber Cement products resist damage from hail or termite attacks, resist rot, are non-combustible, and free from manufacturing defects;" and "[C]ombining the appearance and workability of wood with the durability of specially formulated fiber cement, Allura Lap Siding not only looks great but lasts considerably longer than traditional exterior wall cladding or vinyl siding."[2]

33.     Plaintiffs' subcontractor, as well as Class Members' builders and subcontractors, relied on Defendants' representations and marketing in selecting and purchasing the Siding.

34.     As discussed herein, the Siding has not lived up to Defendants' representations, given the early and severe failure, and given that the Siding requires unexpected maintenance, premature repair, and replacement within the first five (5) years of its service life.

35.     The Siding prematurely fails, causing damage to the underlying structures and

---

[2] www.allurausa.com

other property of Plaintiffs and members of the Class and lowers the value of the property.

36.    All of Defendants' Siding is uniformly defective such that Plaintiffs and Class members' Siding fails before the time periods advertised, marketed, and represented by Defendants, or otherwise expected by ordinary consumers purchasing siding.

37.    Specifically, Plaintiffs' and Class Members' Siding is cracking, splitting, breaking, warping, and falling off Plaintiffs' and Class Member's homes.

38.    The failures of the Siding create leakage paths, which has or will allow water to infiltrate the home and damage other portions of the home, including framing, insulation, drywall, and interior components.

39.    The defect present in the Siding is so severe that Plaintiffs and Class Members must repair or replace their siding sooner than reasonably expected by ordinary consumers who purchase siding generally and by consumers who purchased the Siding.

40.    As a result of the defect and failures alleged herein, Plaintiffs and the Class have suffered actual damages.

41.    The above-described defects are due to fundamental design, engineering, formulation, and manufacturing errors, which are within Defendants' expertise.

42.    Because the Siding prematurely fails and permits water intrusion, it violates the building codes and industry standards.

43.    The above-described deficiencies exist at the time the Siding leaves the factory.

44.    Failure of the Siding begins upon installation and continues during repeated and prolonged exposure to weather and ordinary use.

45.    The Siding on Plaintiffs' and Class Members' homes has and will continue to fail prematurely compared to the time expected by ordinary consumers, the time marketed by

Defendants. This will cost each homeowner thousands of dollars to repair the damage associated with the Siding, and to prevent such damage from continuing into their homes and to prevent water intrusion into their home due to defects in the siding.

46.     Defendants knew or reasonably should have known the Siding is defective as designed and manufactured such that the product fails prematurely by cracking, splitting, warping, and breaking.  Further, Defendants knew or reasonably should have known that such damage will create paths for repeated water intrusion into the home, causing damage to framing components, insulation, drywall, and other property within the home.

47.     These damages begin to manifest within the first five (5) years of the service life of the Siding, despite the Siding having been represented to be a 50-year product by the Defendants.

48.     Consequently, the Siding does not perform in accordance with the representations of the Defendants, or the reasonable expectations of consumers, and is not a suitable building product to be installed on houses or buildings.

49.     Upon information and belief, Defendants have received thousands of complaints from homeowners and builders notifying them that Defendants' Siding is cracking, peeling, and falling off of homes and buildings.

50.     When contacted about the defect and damage to the Siding, the Defendants knowingly misrepresent the cause of the damage to be due to mishandling or installation error by the contractor that installed the Siding.

51.     Despite receiving a litany of complaints from consumers, such as Plaintiffs and other members of the Class, Defendants have refused to convey effective notice to consumers about the defects, and refused to fully repair, replace, or otherwise compensate Plaintiffs and

Class Members for the damage caused by the premature failure of their product.

52.    Defendants' response to customers' claims has been woefully inadequate under the circumstances. Defendants are seeking to limits homeowners' recovery to replacement costs of individual boards of Siding piece by piece. Defendants do not pay the cost of labor or paint to replace failed Siding, and leave the remaining defective product on the home.

53.    Defendants' uniform representations to Plaintiffs and the Class that the Siding defects did not represent a design or manufacturing defect and/or that the problems were caused by improper installation constitute affirmative misrepresentations of material fact in light of the known defects inherent in the Siding purchased by Plaintiffs and the Class.

54.    Such representations serve to conceal the true nature of Defendants' defective Siding.

55.    At all relevant times, including at the time of sale and during communications related to complaints with the Siding, Defendants had a duty to disclose to Plaintiffs and Class Members that the Siding was defective, prone to foreseeable and uniform problems, such as the problems described herein, and otherwise was inherently flawed in its design such that the Siding was not suitable for use as an exterior building material.

56.    Because the defects in Siding are latent and not detectable at the time of purchase until manifestation, Plaintiffs and the Class members were not reasonably able to discover their Siding was defective until the damage begins to manifest several years after installation, despite the exercise of due diligence.

57.    The relatively small size of the typical individual Class member's claims, and because most homeowners and/or property owners have only modest resources, makes it unlikely that individual Class members could afford to seek a full and fair recovery against

Defendants on their own.

58.     This is especially true in light of the size and resources of Defendants, and a class action is, therefore, the only reasonable means by which Class members can obtain relief from these Defendants.

59.     Plaintiffs seek to recover, for herself and for the Class, the costs of repairing the damage to her property and replacing her Siding.

## PLAINTIFFS' EXPERIENCE

60.     In 2016, Plaintiffs' home located at 4704 Deerfield Place, Smithfield, Kentucky was constructed, and Defendants' fiber cement siding was installed in June of 2016.

61.     Plaintiffs relied on their builder in the selection of the Siding, and believed and expected that the Siding was a good quality building material that would last 50-years, as represented by Defendants.

62.     Further, Plaintiffs' builder completed training to become Allura certified installers.

63.     In the fall of 2018, Plaintiff Walter A. Smith was doing yard work and noticed numerous cracks in the Siding.  After contacting the builder, Plaintiffs were directed to contact Allura with regard to the problems with the Siding.

64.     On October 29, 2018, Plaintiffs contacted Defendants regarding the problems observed.  Defendants directed Plaintiffs to submit photographs of every board that was cracked. Given the height of Plaintiffs' home, it took weeks to collect the requested information. However, Plaintiffs submitted a claim and all supporting materials to Defendants, stating that more than thirty (30) boards had "severe cracking on siding all the way through…"

65.     The below photograph was submitted to Defendants and is representative of the

widespread cracking in the various pieces of Siding:



66.    Defendants subsequently deployed a representative to Plaintiffs' home to inspect

the Siding.

67.    On January 4, 2019, Defendants denied Plaintiffs' claim, stating:

Areview [sic] of the photographs you submitted coupled with the independent
inspection indicates that there is no warrantable condition or manufacturing defect
with the Allura siding material installed at your home.   …The independent
inspection indicates installation deviations.

68.    Despite Defendants' misrepresentation that the cause of the damage was

installation errors, Defendants' offered Plaintiffs $18.00 towards replacement of 40 cracked

boards, or $720.00 as a "gesture of goodwill" should Plaintiffs agree to sign a document

"accepting the offer as a full and final settlement and waive any further warranty rights to the

product being claimed."

69.    Given Defendants' "gesture of goodwill" was woefully inadequate, Plaintiffs did not accept or waive their rights with regard to the Siding.

70.    Upon information and belief, Defendants' have engaged and continue to engage in a pattern of denying the Siding claims due to alleged installation errors, while simultaneously offering homeowners "gestures of goodwill" in an effort to induce them to waive their rights with regard to the defective Siding.

## ESTOPPEL FROM THE STATUTE OF LIMITATIONS OR STATUTE OF REPOSE

71.    Defendants knew or reasonably should have known the Siding was defective prior to the time of sale, and intentionally concealed that material information and the truth concerning their product from Plaintiffs, Class members and the general public, while continually marketing the Siding as dependable.

72.    Defendants' acts of concealment include failing to disclose that the Siding was defectively manufactured and would deteriorate in less than its expected lifetime, leading to damage to the very structures they were purchased to protect.

73.    Plaintiffs did not discover that the Siding suffers from an inherent defect until recently.

74.    Defendants made affirmative misrepresentations to Plaintiffs and Class Members when receiving complaints about the Siding, including that the damage was caused by installation errors.  Defendants knew these statements to be untrue at the time they were made, failed to disclose the true defective nature of the Siding, and did so with the intent to conceal or suppress the truth so that Plaintiffs and Class Members would not pursue claims against Defendants and/or would not otherwise recognize that the Siding was defective until after the

statute of limitations or statute of repose had expired.

75.     Accordingly, Defendants are estopped from asserting the statute of limitations or statute of repose as bars to this action.

## ESTOPPEL FROM PLEADING LIMITATIONS AND DISCLAIMERS

76.     Defendants are also estopped from relying on any limitations, restrictions, or disclaimers pertaining to Plaintiffs' and Class Members' rights, as a defense to Plaintiffs' and Class Members' claims.

77.     By virtue of Defendants' acts, the Siding installed in Plaintiffs' and Class Members' residences has not lived up to Defendants' marketing, advertisements, and other representations, and given the defective condition of the Siding and the premature failure the Siding that requires unexpected maintenance, wear and/or replacement, the Siding has not proven to be of the value bargained for and/or of that compared to other siding.

78.     Defendants knew or should have known that their Siding was defective in design and/or manufacture, and said Siding was not fit for their ordinary and intended use, was not merchantable, and failed to perform in accordance with the advertisements, marketing materials and other representations disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiffs and Class Members.

79.     Defendants' shipping of the Siding with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects makes any limitations or restrictions as to Plaintiffs and Class Members' rights null, and therefore void *ab initio.*

## CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring this class action on behalf of herself and a Class defined as follows:

**All persons and entities owning structures within the State of**

> Kentucky on which Defendants' fiber cement Siding is
> installed.

The class is defined so as to exclude: (a) any Judge or Magistrate Judge presiding over this

action and members of their families; (b) Defendants and any employee of Defendants; (c) any

entity in which Defendants have a controlling interest or which has a controlling interest in

Defendants' and its legal representatives, assigns, and successors; and (d) any person who has

released Defendants or is currently in litigation with Defendants related to Defendants' Siding.

Plaintiffs propose that the Class be divided into subclasses if necessary to align class

interests.

81.     Plaintiffs seek class certification under Fed. R. Civ. P. 23(b)(3) and (c)(4).

82.     Plaintiffs and Class Members can demonstrate that common questions of law and

fact predominate over questions affecting only individual class members. R. 23(b)(3). Those

questions include:

(a) Whether the Siding is defective;

(b) Whether the Siding is subject to cracking and is not suitable for use as an
exterior siding product for the duration of time advertised and marketed;

(c) Whether the Siding will continue to crack and prematurely fail over time;

(d) Whether Defendants were negligent in their design and manufacture of the Siding;

(e) Whether Defendants knew or should have known about the defective condition
of the Siding;

(f) Whether Defendants concealed and/or failed to disclose the defective
condition of the Siding to consumers;

(g) Whether Defendants breached their implied warranties;

(h) Whether Defendants' conduct was negligent, reckless, willful, wanton,
intentional, fraudulent or the like, entitling Plaintiffs and Class Members to
statutory or punitive damages from Defendants;

(i) Whether Defendants' conduct, acts and omissions constitute a breach of

contract, violation of the building code, negligence, negligence *per se*, negligent misrepresentations and/or violation of the Kentucky consumer protection laws.

(j)  Whether the Siding failed to perform in accordance with the reasonable expectations of ordinary consumers;

(k)  Whether Defendants' conduct in marketing and selling its Siding involved misrepresentations, intentional omissions, or was otherwise unfair and deceptive; and

(l)  Whether Plaintiffs and the Class are entitled to compensatory damages and the amount of damages for the removal and replacement of the defective Siding.

83.     Plaintiffs can show that the class action is a superior device for resolving these claims. R. 23(b)(3). It is superior because individual joinder of all members of the Class is impracticable.

84.     If individual Class Members were required to bring separate actions, this Court and Courts throughout Kentucky would be confronted with a multiplicity of lawsuits burdening the court system, while also creating the risk of inconsistent rulings and contradictory judgments.

85.     Moreover, Plaintiffs envision no unusual difficulty in the management of this action as a class action.

86.     Absent a class action, the vast majority of Class Members likely would not be in a position to litigate their claims individually given the expert and other costs associated with investigation and pursuit of a product liability action, and would have no effective remedy to vindicate their claims.

87.     Plaintiffs can also meet the requirements of Fed. R. Civ. P. 23(a).

88.     *Numerosity*, 23(a)(1): Members of the Class are so numerous that their individual joinder is impracticable. While the precise number is unknown at this time, upon information and belief, the proposed Class is comprised of thousands of members dispersed throughout the state

of Kentucky, the joinder of whom in one action is impractical.

89.     Upon information and belief, the Class is ascertainable and identifiable from Defendants' records, builders' and contractors' records, and through looking at the Siding.

90.     *Commonality*, 23(a)(2)*:* The critical question of law and fact common to the Class that will materially advance the litigation is whether the Siding is inherently defective, contrary to the expectations imparted by Defendants through their representations, and omissions.

91.     Furthermore, other questions of law and fact common to the Class that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class.

92.     *Typicality*, 23(a)(3)*:* Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, and selling the defective Siding and Defendants' conduct in concealing the defect in the Siding to owners, contractors, developers, and suppliers. There is nothing unusual or atypical about the way the Siding is prematurely failing on Plaintiffs' house.

93.     *Adequate Representation*, 23(a)(4)*:* Plaintiffs will fairly and adequately protect the interests of the Class members. She has no interests antagonistic to those of the proposed Class.

94.     Further, Plaintiffs have retained counsel experienced in the prosecution of complex class actions and construction defect cases. Plaintiffs' counsel is adequately capitalized to handle litigation of this size.

### FIRST CAUSE OF ACTION
***Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose***

95.     The above allegations are incorporated as fully as if stated verbatim herein.

96.     At all times mentioned herein, Defendants manufactured or supplied the Siding,

and prior to the time the Siding was purchased by Plaintiffs' and Class Members' contractors or one of its entities or subcontractors, Defendants impliedly warranted to the builders, subcontractors, Plaintiffs, Class Members, and the general public that the Siding was of merchantable quality and fit for the use for which it was intended.

97.    Plaintiffs and Class Members relied on the skill and judgment of the Defendants in purchasing the Siding and the homes on which the Siding was installed.

98.    However, as described herein, the Siding was unfit for its intended use and it was not of merchantable quality, as warranted, in that it had propensities to break down and fail to perform and protect when put to its normal intended use.

99.    The Siding caused Plaintiffs and Class members to sustain damages as herein alleged.

100.    The Siding was similarly unfit for its particular purpose to be used on Plaintiffs' and Class Members' homes.

101.    Defendants failed to provide adequate remedy and added additional terms to the warranties which independently cause the purported warranty to fail its essential purpose, thereby permitting remedy under implied warranties.

102.    In addition, any attempts to waive or disclaim these warranties were not seen by Plaintiffs or Class Members, were not conspicuous to the purchasers or homeowners, were not bargained for, and are otherwise unenforceable.

103.    As a direct and proximate result of the breach of said warranties, Plaintiffs and the Class members suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### *Negligent Misrepresentation*

104.    The above allegations are incorporated as fully as if stated verbatim herein.

105.    Defendants, through their marketing. materials, website, brochures, product literature, and agents, made representations to the Plaintiffs and Class Members, builders, suppliers and the public about the superior quality and durability of their Siding and components.

106.    Defendants transmitted said representations to the Plaintiffs and Class Members, builders, suppliers and the public while failing to disclose the defective condition of their Siding, including the premature failure and consequential damages that would or could likely result from their Siding' defects.

107.    Defendants have a pecuniary interest in making these representations and non-disclosures and had a duty to communicate truthful information to the Plaintiffs and Class Members, builders, suppliers and the public.

108.    Defendants breached their duties by failing to exercise due care in making the above-described representations and non-disclosures and the Plaintiffs and Class Members, builders, suppliers and the public relied on these representations and non-disclosures.

109.    The Plaintiffs and Class Members have suffered a pecuniary loss as a direct and proximate result of their reliance upon these representations and non-disclosures.

### THIRD CAUSE OF ACTION
### *Negligence*

110.    The above allegations are incorporated as fully as if stated verbatim herein.

111.    Defendants had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing of the Siding.

112.    Defendants breached their duty to Plaintiffs and the Class by designing, manufacturing, advertising and selling a product that is defective and will fail prematurely, and by failing to promptly remove the Siding from the marketplace or to take other appropriate

remedial action.

113.   Defendants knew or should have known that the Siding was defective, would fail prematurely, was not suitable for use as an exterior siding product, and otherwise was not as warranted and represented by Defendants.

114.   As a direct and proximate cause of Defendants' negligence, Plaintiffs and the Class have suffered actual damages in that the Siding was purchased by an agent of Plaintiffs or the Class Members and installed on Plaintiffs' and Class Members' homes.

115.   Upon information and belief, the defect causes damage to Plaintiffs' and Class Members' Siding, which creates paths for leakage to occur to framing, insulation, drywall, and other damage inside the home.

116.   These failures have caused and will continue to cause Plaintiffs and the Class Members to incur expenses repairing or replacing their siding as well as the resultant progressive property damage.

**FOURTH CAUSE OF ACTION**
*Violations of Kentucky Consumer Protection Act and*
*Unfair Trade Practices and Consumer Protection Laws*

117.   The above allegations are incorporated as fully as if stated verbatim herein.

118.   Defendants are manufacturers, marketers, sellers, and distributors of Siding.

119.   The conduct described above and throughout this Complaint took place in the Commonwealth of Kentucky and constitutes unfair methods of competition or unfair and deceptive acts.

120.   The Kentucky Consumer Protection Act applies to all claims of Plaintiffs and Class Members because the conduct, which constitutes violations of KRS 367.110, by Defendants occurred within the Commonwealth of Kentucky, and Plaintiffs and Class Members

are "persons" within the meaning of KRS 367.110.

121.    Plaintiffs and Class Members are consumers who purchased the Siding for homes and other structures on which the Siding was installed, primarily for personal, family, or household use within the meaning of KRS 367.220.

122.    Defendants used and employed unfair methods of competition and/or unfair or deceptive acts or practices within the meaning of KRS 367.170.

123.    Defendants knew or should have known that its Siding was defective at the time it left the manufacturing plant, that it would fail prematurely, was not suitable for us as an exterior building product, and otherwise was not as represented by Defendant.

124.    Defendants knew at the time it responded to Plaintiffs and Class Members who complained about the premature failure, that the Siding was defective; however, Defendants concealed the defective nature from Plaintiffs and Class Members and misrepresented that the damages reported were due to installation errors.

125.    Defendants' misrepresentations, concealment, omissions, and deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiffs and Class Members to be deceived about the durability of the Siding, the quality of the Siding, and its use as an exterior building product.

126.    Defendants intended for Plaintiff and Class Members to rely on these misrepresentations, concealment, omissions, and deceptive conduct regarding the suitability, durability, and service life of its defective product.

127.    Defendants' conduct and omissions described herein repeatedly occurred in its trade or business, and were capable of deceiving a substantial portion of the consuming public.

128.    The facts concealed or not disclosed by Defendants are material facts in that

Plaintiffs and any reasonable consumer would have considered premature failure of the Siding within the first five (5) years after installation in their decision whether to purchase the Siding or the homes on which the Siding is installed.  Had the Plaintiffs and Class Members known of such premature failure, they would not have purchased the Siding or the homes, would have negotiated a substantially reduced price, or would have selected other Siding.

129.    Defendants intended that Plaintiffs and Class Members would rely on the deceptive conduct and representations in purchasing their Siding, and would be unaware of the undisclosed material facts.

130.    Defendants intended that Plaintiffs and Class Members would rely on misrepresentations that the damages experienced were due to installation errors and not manufacturing, design, or formulation defects.

131.    This conduct constitutes consumer fraud within the meaning of the various consumer protection statutes.

132.    Defendants' unlawful conduct continues today, with no indication that it will cease.

133.    Plaintiffs and Class Members have been damages as a proximate result of Defendants' violations of Kentucky's Unfair Trade Practices and Consumer Protection laws, and have suffered actual, ascertainable losses and damages by virtue of having purchased defective Siding.

134.    As a direct and proximate result of Defendants' violations of Kentucky's Unfair Trade Practices and Consumer Protection laws, Plaintiffs and Class Members have suffered and will continue to suffer such ascertainable loss of money due to repair and replacement of their Siding.  Therefore, Plaintiffs and Class Members are entitled to actual damages, treble damages,

costs, and attorneys' fees as provided by KRS 367.220.

WHEREFORE, Plaintiffs prays that this Court will certify a class and for judgment

against Defendants, for:

1. For an order certifying the Class, appointing Plaintiffs as representative of the Class, and appointing the law firm representing Plaintiffs as counsel for the Class;

2. Declare that Defendants are financially responsible for notifying all Class members of the problems with the Siding;

3. Enter an award of attorneys' fees and costs, as allowed by statute and law;

4. Enter an award of pre-judgment and post-judgment interest, as provided by statute and law;

5. Enter an award for compensatory damages sustained by Plaintiffs and Class;

6. Enter and order for payment of costs of suit herein incurred;

7. Enter an award of treble damages for its unfair and deceptive trade practices as provided under Kentucky law; and

8. Grant such other or further relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues.

January 28, 2019

Respectfully submitted,

**BRADEN HUMFLEET & DEVINE,PLC**

/s/ Roger N. Braden
Roger N. Braden
7000 Houston Road, Suite 5
Florence, Kentucky 41042
Phone: (859) 414-0777
Facsimile: (859) 993-0350

AND

Gregory F. Coleman*

21

Rachel Soffin*
Adam A. Edwards*
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
greg@gregcolemanlaw.com
rachel@gregcolemanlaw.com
adam@gregcolemanlaw.com

*To be admitted Pro Hac Vice*

*Attorneys for Plaintiffs*